## Means v. Commonwealth.

(Decided January 23, 1923.)

Appeal from McCracken Circuit Court.

1. Criminal Law—Confession—Evidence—Instructions.—Evidence of a voluntary confession made to another before arrest by the appellant and two other persons of their theft of an automobile, for which they were later jointly indicted, was properly admitted on his separate trial for the offense. And though the *corpus delicti* was so well established by other evidence as to render unnecessary an instruction to the jury respecting the legal effect of a confession of guilt, not made in open court, yet the giving of such instruction by the court cannot be regarded reversible error, for instead of prejudicing the appellant in any substantial right, it provided him an additional safeguard to which he was not entitled.

2. Criminal Law—Instructions.—Where the requirement in the beginning of an instruction that the facts essential to the defendant's conviction first predicated must be believed by the jury from the evidence to the exclusion of a reasonable doubt, is made applicable by the use of the copulative conjunction "and" to a like belief in every other subsequently predicated fact stated in the instruction as necessary to establish the defendant's guilt, the failure to repeat in the instruction after "and" the words "believe from the evidence to the exclusion of a reasonable doubt," did not render the instruction as a whole misleading, or otherwise so de-

fective, as to make it prejudicial to the substantial rights of the appellant.

3. Criminal Law—Accomplices—Corroboration.—The instruction relating to the necessity of corroboration of the testimony of an accomplice, given by the trial court, was authorized by section 241, Code, because of the testimony in behalf of the Commonwealth of an accomplice of the appellant.    Indeed, a failure to give the instruction, would have been reversible error.

NICHOLS & NICHOLS for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Complaining of his conviction in the court below of the offense of "unlawfully taking, driving and operating a motor vehicle without the knowledge or consent of the owner," denounced as a felony by Kentucky Statutes, section 2739g-58, Floyd Means seeks by this appeal the reversal of the judgment manifesting that conviction. Though jointly indicted with two other persons, Jewell Means and Frank Frizzell, for the offense charged, the appellant was accorded a separate trial. The verdict of the jury by which he was found guilty of the offense, fixed his punishment at confinement of two years in the penitentiary.

The appellant assigns as error entitling him to the reversal of the judgment the grounds that were filed in support of his motion for a new trial, overruled by the circuit court, viz.: (1) Failure to properly instruct the jury. (2) Admission of incompetent evidence. (3) Failure to give an instruction peremptorily directing the jury to return a verdict of acquittal.

It appears from the testimony of one Lewin Miller, a witness for the Commonwealth, that during the summer of 1922, about 8 o'clock p. m., he ran a Hudson automobile worth $2,000.00, of which he was the owner, from his residence to the corner of 5th street and Kentucky avenue in the city of Paducah, where he temporarily parked and left it to attend to a matter of business near that point. Upon returning twenty minutes later to where he had parked the automobile, he discovered that it had been taken and moved away in his absence by a person or persons then unknown to him, which taking and removal of the car was without his consent or knowledge. Miller at once informed the city police of the dis-

appearance of his car and asked their assistance in recovering it. He also procured from a nearby garage a Ford car and started out in search of his stolen automobile. It was found at 9:30 o'clock the same night at the entrance of a suburban park in which a carnival was being held, where it had just been abandoned by the appellant, his brother, Jewell Means, and Frank Frizzell.

It also appears from the testimony of Joe Phillips. another witness for the Commonwealth, that he and a friend, Mahlon Berry, were in Phillips' car at the park the night the car of Miller was taken: that Phillips knew Miller's car and that as his (Phillips') car got to the park entrance it was caught in a traffic jam of cars which compelled it to stop by the side of a Hudson car occupied by appellant, Jewell Means and Frank Frizzell that was also caught in the jam, and the latter car Phillips then identified as that of Miller and the occupants as the three persons named. He asked the latter where they were going and where they got the car they were occupying. In reply to which they said they got the car in front of the Masonic building and were going to the carnival. Phillips thereupon called Berry's attention to the fact that the car in question was the property of Miller, told him to keep a watch on it while he (Phillips) went on the hunt of Miller, for which purpose he left his own car in charge of Berry. What he said to Berry was evidently overheard by the occupants of the Miller car, for he had gotten but a short distance from his own car when he discovered that they had abandoned the Miller car and were fleeing across an adjoining field.

Frank Frizzell having previously made a voluntary and full confession of the part he took in the theft of the Miller automobile, and others not involved in this prosecution, was introduced as a witness for the Commonwealth. Frizzell testifed that on the night of the carnival and a few minutes before the taking of the Miller car, he and Jewell Means were standing on Hays avenue, Paducah, engaged in conversation respecting their purpose of attending the carnival, where they were joined by the appellant, who had that evening ridden with them down town on the same street car; that the three then discussed the previous taking of automobiles in which they had engaged and then agreed to take one that night and ride in it to the carnival. Following this agreement the three started out to find an automobile they would wish to take and, after examining and rejecting several, they

discovered that of Miller which they decided to appro-
priate and did in fact take. By arrangement between
the three, Frizzell and the appellant walked a square
from the automobile leaving Jewell Means to get it and
overtake them, which he did; and when the latter got to
them with the car they entered it and the three then rode
in it out to the park to attend the carnival, and upon
reaching the entrance to the park were there caught in
the traffic jam as related by the witness, Phillips. Friz-
zell also testified that he, Jewell Means and the appel-
lant all occupied the front seat of the Miller car in going
out to the park and that the car was operated by him.
He likewise testified to the identification of the Miller
car by Phillips at the park entrance and as to the latter's
leaving his own car in charge of his companion, Berry,
and going out of the jam in search of Miller to inform
him of his discovery of his car in the traffic jam, which
so alarmed Frizzell, appellant and Jewell Means that
they hastily abandoned the Miller car and escaped by
fleeing in the manner described by Phillips. Jesse Hor-
ton, also a witness for the Commonwealth, testified that,
before their arrest, the appellant, Jewell Means and
Frank Frizzell in a conversation with him respecting the
Miller automobile, each admitted they had taken it; and
Jack Nelson, a policeman, testified that following the
arrest of the entire three and while they were in his cus-
tody and being questioned, Frizzell and Jewell Means
in the presence of appellant confessed that they and he
took Miller's car, which appellant did not deny.

The appellant testifying in his own behalf admitted
that he and Frank Frizzell met his brother Jewell Means
near where the Miller car was parked the night it was
stolen, and that they were told by the latter to wait a
while and he would attend the carnival with them and
would get a car in which they could go. Whereupon the
appellant asked Jewell, as he said, whose car he would
get, to which Jewell replied: "The fellow's he had the
other night."

The appellant also admitted that he, Frizzell and
Jewell Means shortly after the conversation mentioned
rode out in the car in question to the park at the entrance
of which they were caught in the traffic jam, and that the
car was there identified by Phillips whose announced
purpose of finding Miller and advising him of its dis-
covery, caused him (appellant) and the other occupants
to leave it and take to flight to avoid arrest. Appellant,

however, denied that he knew before its discovery and identification by Phillips the car had been stolen, but admitted that as he and his companions then fled from it he said to them: "You all stole that car," to which Jewell Means answered "Yes," and that he then said to Jewell: "You had better make it your last one."

Following the introduction of the appellant as a witness in his own behalf, other witnesses testified regarding his reputation; those introduced for the Commonwealth saying it was bad both as to veracity and morality, and those introduced in his behalf and professing to know his reputation saying it was good.

Looking now to the several contentions of the appellant we find that his objection to instruction 1 given the jury by the trial court is hypercritical and without actual merit. The instruction is as follows:

No. 1. "Gentlemen of the jury: If you shall believe from the evidence in this case to the exclusion of a reasonable doubt that in McCracken county, Kentucky, and before the finding of the indictment herein, to-wit: on the 27th day of September, 1922, that Jewell Means and Frank Frizzell did unlawfully and feloniously take, drive and operate a motor vehicle, to-wit: a Hudson automobile, the personal property of Lewin Miller, without the consent and knowledge of the owner thereof, and that the defendant, Floyd Means, did unlawfully and feloniously, not being present at the time, yet did procure, counsel or encourage and advise the said Jewell Means and Frank Frizzell in the taking of said car, if it was so taken, you will find the defendant guilty and fix his punishment at confinement in the penitentiary for a period of not less than two nor more than five years in your discretion."

It is insisted by the appellant that the failure of the court to repeat in the instruction the words, "and shall believe from the evidence to the exclusion of a reasonable doubt," immediately preceding the words "and that the defendant, Floyd Means, did unlawfully and feloniously, not being present at the time, yet did procure," etc., rendered it fatally defective. The contention is unsound, because the requirement in the beginning of the instruction that the facts first predicated must be believed by the jury to the exclusion of a reasonable doubt, is carried to and made applicable by the use of the copulative conjunction "and," to the necessity of

a like belief in every other subsequently predicated fact stated in the instruction as necessary to establish the defendant's guilt. It is not true, therefore, as claimed by the appellant, that the omission of the words "to the exclusion of a reasonable doubt," from that part of the instruction referred to, left it to the jury to determine the appellant's participation in the theft of the automobile from the mere preponderance or weight of the evidence.

It is equally certain that the appellant's complaint of instruction No. 2, respecting the legal effect of a confession by a defendant, not made in open court, is unsupported by the record. There was, as previously stated, evidence furnished by the testimony of Jesse Horton that the appellant, before his arrest, voluntarily confessed to him his participation in the theft of the car of Miller. As the *corpus delicti* was well established by evidence other than the appellant's confession to Horton, the giving of this instruction was unnecessary, but instead of being prejudicial to any substantial right of the appellant, it provided him with an additional safeguard to which he was not entitled.

The appellant's complaint of instruction 3, relating to the necessity of corroboration of the testimony of an accomplice, is unavailing. The instruction, in view of the testimony of Frizzell, an accomplice, was required by section 241, Civil Code, and the failure to give it would have been reversible error.

We find in the record no ground for the appellant's further complaint of the admission of incompetent evidence. There was an attempt to prove by the testimony of Nelson that both Frizzell and Jewell Means, while under arrest and being questioned by a police officer, in the presence of the appellant, admitted their guilt and his of the theft of Miller's automobile, but it appears from the record that the questions asked Nelson looking to the bringing out of these admissions, were withdrawn and the answers thereto excluded. The appellant was not therefore prejudiced in any substantial right by the admission of incompetent evidence.

His final contention that he was entitled to a directed verdict of acquittal, because of the absence of evidence requiring the submission of the case to the jury, seems to us to be wholly devoid of merit, for in our opinion the abundant proof of his guilt of the crime charged furnished by the evidence in behalf of the Commonwealth,

was largely supplemented by his admissions of participation therein and the corroborating circumstances connecting him with its commission.

Wherefore the judgment is affirmed.